**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1586-18T3

WILLIAM R. HIGGINS,

     Plaintiff-Respondent,

v.

GREGORY S. SAYLOR,

     Defendant-Appellant,

and

ABATIS HOLDINGS, LLC,
and ABATIS SECURITY, LLC,

     Defendants.

_____

          Submitted August 1, 2019 – Decided August 8, 2019

          Before Judges Whipple and Firko.

          On appeal from the Superior Court of New Jersey, Law Division, Salem County, Docket No. L-0044-18.

          Paul A. Leodori, attorney for appellant.

          Martin Law Firm, LLC, attorneys for respondent (Joseph A. Martin, on the brief).

PER CURIAM

Defendant Gregory S. Saylor appeals from a November 9, 2019 order entered by Judge James R. Swift denying his motion to terminate arbitration. Because the orders under review do not resolve all of the claims between the parties, we dismiss the appeal as interlocutory.

I.

Plaintiff William R. Higgins, a retired state trooper, and defendant became embroiled in a business dispute involving two companies, Abatis Security, LLC, which provides private security services to businesses in the Atlantic City area, and Abatis Holdings, LLC, which was a corporate shell company having no operations. Plaintiff was the sole member of Abatis Security and defendant was employed by that company but had no ownership interest. Both parties were members of Abatis Holdings. Defendant failed to disclose to plaintiff that he filed a petition in bankruptcy prior to the formation of Abatis Holdings and that defendant could not be licensed to perform security services.

In early 2016, plaintiff discovered that defendant and two employees, Graff and Tejada, who are not parties to this appeal, were stealing money from Abatis Security, totaling approximately $200,000. Defendant and Graff admitted to the theft, resulting in plaintiff notifying them of their termination of

2

employment with Abatis Security. Plaintiff, defendant, and Graff subsequently entered into a Stand Still Agreement, which allowed defendant and Graff to retain their positions within Abatis Security, continuing their weekly paychecks and an automobile allowance, until they could resolve their dispute through mediation or arbitration. Plaintiff and Graff subsequently settled their dispute amongst themselves, resulting in Graff relinquishing his ownership interest in Abatis Holdings, but the dispute between the parties was unresolved. The Agreement, in pertinent part, provided:

> 2. Arbitration. If the parties are unable to resolve their disputes through mediation, any remaining disputes will be submitted to binding arbitration before retired [J]udge Eugene Serpentelli. If Judge Serpentelli is unavailable, the parties will confer and agree on a replacement arbitrator. The arbitration shall proceed on an expedited basis and will be binding.
>
> 3. Interim Measures. In the interim, and until this matter is fully and finally concluded through mediation or arbitration, or until the parties agree otherwise or the arbitrator so rules, the following terms shall remain in effect:
>
> > a. Messrs. Graff and [defendant] may return to work at the [c]ompany's 520 Pacific Avenue corporate offices . . . on May 6, 2016, and [plaintiff] will return the computers they use in the business of Abatis Security and take such steps as may be necessary to restore their email access and return everything removed from the

[o]ffice to restore the [o]ffice to the same condition it was in prior to Thursday, May 5, 2016. The [c]ompany's bookkeeper . . . is to work in the [o]ffice but will be available to [plaintiff] to assist him with event operations and other duties as needed.

b. Messrs. Graff and [defendant] will continue to receive their salary and automobile allowance payments. Salary payments to Messrs. Graff and [defendant] will be made weekly each Tuesday. Automobile allowance payments will be paid on the first day of the month.

c. Messrs. Graff and [defendant] will return to and continue in their respective positions with Abatis Security.

. . . .

e. [Plaintiff] will remain as sole signatory on the TD Bank account for Abatis Security, however, [plaintiff] will not send out any Abatis Security checks, with the exception of the parties' payroll and automobile allowance payments, without first advising Messrs. Graff and [defendant] of the checks and seeking their approval.

[(Emphasis added).]

Pursuant to the Agreement, plaintiff made five $2000 weekly payments to defendant on July 2, August 2, September 7, September 17, and September 20,

4

2016; and two $735 payments on August 1 and September 1, 2016. Defendant certified the last payment he received from Abatis was in March 2017, and he claims he is owed $148,760 for the pay periods between April 4, 2017 and August 14, 2018. Defendant also asserts plaintiff violated section (e) of the parties' Agreement by writing checks to himself and to his attorney's offices without seeking prior approval from defendant.

Plaintiff claims he ceased making weekly payments to defendant because he did not continue to work, as required by the Agreement, and defendant only appeared at the office on Tuesdays, which were paydays. Plaintiff sought to remove the matter from arbitration and transfer the case to the Law Division for adjudication, but the trial court enforced the arbitration clause in the Agreement and referred the parties back to arbitration. Thereafter, defendant filed a motion in the Law Division, and before the arbitrator, seeking to compel plaintiff to compensate defendant for the missed payments and to resume making weekly payments. Both motions were denied, and both orders are appealed from.

Because of plaintiff's failure to pay defendant's weekly salary, he argues that he was held in contempt for failure to pay his child support obligation, a bench warrant was issued for his arrest, and his driver's license was temporarily

suspended. Defendant's previous counsel was relieved from further representing

him due to defendant's failure to pay his fees. The trial court stated:

> And I know the argument is [the parties] also agreed that [defendant] would get paid, but . . . we're just ignoring the fact that [defendant] was supposed to work. The whole idea underlying this [S]tand[-][S]till [A]greement was that the parties would continue to work out these problems as this business was ongoing.

The trial court denied counsel's request to establish a discovery schedule,

stating: "I can't do that. The agreement provides for arbitration. I've ruled that

there needs to be arbitration, twice now. And [the case is] going to arbitration."

Abatis Security became defunct in February 2018, when plaintiff decided to

pursue another business opportunity.

## II.

The Rules that warrant dismissal of interlocutory appeals are clear. We

consider appeals from final orders of a trial court and other orders expressly

designated as final for purpose of appeal. R. 2:2-3(a)(1) and (3). "To be a final

judgment, an order generally must 'dispose of all claims against all parties.'"

Janicky v. Point Bay Fuel, Inc., 396 N.J. Super. 545, 549-50 (App. Div. 2007)

(quoting S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 317 N.J. Super. 82, 87

(App. Div. 1998)). This "final judgment rule, reflects the view that 'piecemeal

6

[appellate] reviews, ordinarily, are [an] anathema to our practice.'" Id. at 550 (alterations in original) (quoting S.N. Golden Estates, 317 N.J. Super. at 87).

If an order is not final, or among those orders expressly designated as final for purposes of appeal, a party must seek leave to appeal from the Appellate Division. R. 2:5-6(a). A grant of leave to appeal from an interlocutory order is left to the discretion of this court, and that discretion is exercised sparingly and "in the interest of justice." R. 2:2-3(b); R. 2:2-4; Janicky, 396 N.J. Super. at 550. Here, defendant did not seek leave to appeal from the orders under review.

It is clear that we will not decide an appeal from an interlocutory order merely because the appellant's notice of appeal mischaracterized the order, the respondent did not move to dismiss, or the appeal was "fully briefed." Vitanza v. James, 397 N.J. Super. 516, 519 (App. Div. 2008) (recognizing but declining to follow cases in which the court has granted leave to appeal nunc pro tunc even though appeal was fully briefed on the ground that the practice invites disregard of the Rules).

We recognize that we may, in appropriate cases, grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2); see e.g., Yuhas v. Mudge, 129 N.J. Super. 207, 209 (App Div. 1974) (granting leave to appeal nunc pro tunc "in the interest of prompt disposition of the matter"). However, such relief is not automatic and

should not be presumed.  In dismissing an appeal as interlocutory after it was fully briefed, we stated:

> [I]f we treat every interlocutory appeal on the merits just because it is fully briefed, there will be no adherence to the Rules, and parties will not feel there is a need to seek leave to appeal from interlocutory orders. At a time when this court struggles to decide over [7000] appeals a year in a timely manner, it should not be presented with piecemeal litigation and should be reviewing interlocutory determinations only when they genuinely warrant pretrial review.
>
> [Parker v. City of Trenton, 382 N.J. Super. 454, 458 (App. Div. 2006).]

A "grant of leave to appeal nunc pro tunc is most extraordinary relief[.]" Hallowell v. Am. Honda Motor Co., Inc., 297 N.J. Super. 314, 318 (App. Div. 1997) (quoting Frantzen v. Howard, 132 N.J. Super. 226, 227-28 (App. Div. 1975)).  This case does not warrant such relief.  We add the following comments.

N.J.S.A. 2A:23B-8(b)(1) provides:

> b. After an arbitrator is appointed and is authorized and able to act:
>
> > (1) the arbitrator may issue orders for provisional remedies, including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitration proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and pursuant to the same

8

conditions as if the controversy were the
subject of a civil action[.]

Further, the Act allows an arbitrator to "conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding. The authority conferred upon the arbitrator includes the power to hold conferences with the parties . . . and, among other matters, determine the admissibility, relevance, materiality, and weight of any evidence." N.J.S.A. 2A:23B-15(a).

During oral argument before the arbitrator, plaintiff argued that defendant's motion was premature because he was asking Judge Serpentelli "to make a ruling on a claim without the benefit of discovery or even a factual record, which . . . is not permissible, particularly where, as here, the facts are substantially in dispute." Plaintiff also argued that defendant breached the Agreement first "by engaging in these interminable delays and stall tactics during the arbitration, not producing discovery, raising issues which were resolved and kind of churning the case along so that he can continue receiving his paycheck when he wasn't even working for it."

We have noted that "[a] party seeking to vacate an arbitration award must first obtain trial court review of the award." Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). Here, defendant did not move before the trial court

9

to vacate Judge Serpentelli's order on these grounds. Instead, defendant's motion before Judge Swift asserted plaintiff breached the agreement to arbitrate by not paying defendant's weekly salary, but defendant did not move before the trial court to vacate same on the basis of fraud, corruption, or other undue means. Saliently, defendant's third argument, that we should determine there was fraud, corruption, or other undue means in the arbitration process likewise is not cognizable because we have no jurisdiction.

Defendant also argues Judge Serpentelli refused to enforce a clearly-written contract between the parties, thereby exceeding his authority as an arbitrator. N.J.S.A. 2A:23B-23(a)(4) also allows the trial court to vacate an arbitration award if the arbitrator exceeded his or her powers. "[J]udicial inquiry must consider more than whether a mere mistake occurred." Minkowitz v. Israeli, 433 N.J. Super. 111, 150 (App. Div. 2013). Rather, "the arbitrator[] must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award." Id. at 150-51 (alteration in original) (quoting Tretina v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994)). Additionally, the error must be "fatal" and "result in a failure of intent or be so gross as to suggest fraud or misconduct." Id. at 151 (quoting Tretina, 135 N.J. at 357).

Our careful review of the record reveals the trial court was well within its authority to compel the parties to continue arbitrating their dispute with Judge Serpentelli. Both parties consented to arbitrate their respective claims and agreed to a binding decision by the arbitrator. Judge Serpentelli is the factfinder and shall render a final decision. Therefore, Judge Swift properly declined to consider the parties' mutual bad faith claims. "[O]nce the trial court ordered the parties to proceed in arbitration and dismissed the complaint, that decision ended the litigation in the Superior Court. There [is] nothing left for the trial court to decide between the parties." Wein v. Morris, 194 N.J. 364, 379 (2008).

Plaintiff argues Judge Swift did not err in denying defendant's request for payment in the Superior Court because defendant was, in effect, forum shopping and is now barred by the doctrine of collateral estoppel. Moreover, plaintiff claims defendant fought to have this matter remain in arbitration after plaintiff filed a verified complaint in the Superior Court, and when defendant became "unhappy" with Judge Serpentelli's interlocutory ruling, defendant "ran" back to Judge Swift in an attempt to achieve a different outcome.

"In appropriate circumstances, arbitration awards may be given collateral estoppel effect in subsequent judicial proceedings." Barker v. Brinegar, 346 N.J. Super. 558, 566 (App. Div. 2002) (quoting Konieczny v. Micciche, 505 N.J.

Super. 375, 384 (App. Div. 1997)).  Our Supreme Court has "recognized the potential preclusive effect of an arbitration if the party to be bound has had its day in court."  Habick v. Liberty Mut. Fire Ins. Co., 320 N.J. Super. 244, 258 (App. Div. 1999).  Collateral estoppel may only be invoked after an issue of law or fact has been litigated and determined by a final and valid judgment, however.  Id. at 258.  In order for the doctrine to apply, the asserting party must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173-74 (App. Div. 2000) (emphasis added) (quoting In re Estate of Dawson, 136 N.J. 1, 20 (1994)).]

At oral argument, Judge Serpentelli stated he would "get to a[n] [arbitration] trial. . . on contested issues and . . . decide [them] then."  His order denying defendant's request was not a final order because Judge Serpentelli declined deciding the motion absent a full record.  Collateral estoppel, therefore, cannot be applied here.

12

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Appeal dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1586-18T3